# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| BARBARA TATE,<br>Plaintiff<br><br>vs<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br>Defendant | Case No. 1:09-cv-138<br>Barrett, J.<br>Hogan, M.J.<br><br><br>**REPORT AND**<br>**RECOMMENDATION** |

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner). Plaintiff appeals the Commissioner's determination that she is not disabled prior to the date she turned 55 years of age. This matter is before the Court on plaintiff's Statement of Errors (Doc. 8) and the Commissioner's response in opposition. (Doc. 12).

## PROCEDURAL BACKGROUND

Plaintiff, Barbara Tate, was born in 1952 and completed the tenth grade. Her past work history was as a restaurant server from 1987 to December 2001. She first applied for Disability Insurance Benefits (DIB) in 2002, alleging an onset date of disability of December 26, 2001 due to chronic back, leg, and foot pain and depression. The application was denied initially and on reconsideration. Plaintiff's appeals to the Administrative Law Judge and Appeals Council were also denied. On judicial review, the Commissioner's decision was reversed and remanded for further proceedings under Sentence Four of Section 405(g). *See Tate v. Commissioner*, Case No. 1:05-cv-613 (S.D. Ohio Sept. 8, 2006) (Tr. 517-539). The District Court determined that while

the ALJ implicitly declined to give controlling weight to the opinions of plaintiff's treating physicians, the ALJ erred by failing to indicate the amount of weight given to the physicians' opinions in accordance with controlling Sixth Circuit precedent. In addition, the Court found the ALJ erred by failing to articulate how he reached his residual functional capacity finding. *Id.*

In the interim, plaintiff filed a second DIB application and an application for Supplemental Security Income (SSI) benefits in January 2006. These two applications, as well as the case on remand from the District Court, were associated for a hearing before the ALJ. A hearing was held on April 16, 2007, at which plaintiff, a medical expert, and vocational expert testified.

In May 2007, the ALJ issued a decision finding plaintiff to be disabled as of January 29, 2007, the date she turned age 55, but not before that date. (Tr. 484). Because plaintiff's insured status for DIB purposes expired on September 30, 2006 (Tr. 486), she was not entitled to disability benefits under the DIB program and only eligible for benefits under the SSI program.

The ALJ determined that plaintiff suffers from severe impairments of a history of thoracolumbar strain, residuals of a fracture of the base of the fifth toe on the left foot in September 2004, left peroneal neuropathy in the left fibula head of unclear etiology (EMG in January 2005), pain disorder, and depression (Tr. 486), but that such impairments do not meet or equal the level of severity described in the Listing of Impairments. (Tr. 490). The ALJ determined that plaintiff's overall credibility is poor. (Tr. 493). According to the ALJ, plaintiff retains the residual functional capacity (RFC) to perform a reduced range of light work activities: plaintiff can lift up to 20 pounds occasionally and 10 pounds frequently; she must have the option to alternate between sitting and standing as needed; she must avoid climbing

ropes/ladders/scaffolds, balancing, more than occasional climbing stairs, more than frequent stooping or kneeling, working on uneven surfaces, repetitive use of foot controls on the left, and exposure to hazards; she is limited to no complex or detailed instructions, no requirements to maintain concentration on a single task for longer than 15 minutes at a time, and no direct dealing with the general public; and limited to low stress jobs with no production quotas. (Tr. 491). The ALJ determined that plaintiff cannot perform her past relevant work. The ALJ found that prior to January 29, 2007, the date plaintiff turned 55, she was able to perform a significant number of other light and sedentary jobs in the national economy. (Tr. 499). As of January 29, 2007, plaintiff was found to be disabled under the Grid Rules for light work given her age, limited education, and lack of transferrable work skills. (Tr. 499).

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the

inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d

962, 964 (6th Cir. 1984) (per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence

conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Kirk*, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky*, 35 F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985)(citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th

7

Cir. 1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004); *Walters,* 127 F.3d at 530. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir. 1994).

The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson,* 378 F.3d at 544. In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a

specialist." 20 C.F.R. § 404.1527(d)(5).

## OPINION

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs (Doc. 8 at 2-4; Doc. 12 at 2-6) and will not be repeated here. Where applicable, the Court shall identify the medical evidence relevant to its decision.

Plaintiff assigns four errors in this case: (1) the ALJ erred by giving more weight to the state agency doctor than to plaintiff's treating physician, Dr. Sieben; (2) the ALJ failed to give "good reasons" under 20 C.F.R. § 404.1527(d) for rejecting Dr. Sieben's RFC opinion; (3) the ALJ erred in discrediting plaintiff's subjective complaints of pain; and (4) the ALJ erred by not finding plaintiff disabled under Grid Rule 201.10, Appendix 2, 20 C.F.R. Parts 404 and 416 for sedentary work as of her alleged onset date of disability. For the reasons that follow, the Court finds the ALJ's decision is supported by substantial evidence and should be affirmed.

Assignments of error one and two will be considered together. Plaintiff argues the ALJ erred by giving more weight to the non-examining state agency doctor than to Dr. Sieben, plaintiff's treating family physician, in assessing plaintiff's RFC. Plaintiff contends the state agency doctor was without all of the medical evidence in the record when he reviewed the record in May 2006 and therefore did not have the benefit of Dr. Sieben's later RFC opinion or the evidence concerning plaintiff's unstable gait and foot drop.

Plaintiff also contends Dr. Sieben is entitled to the most weight given her length of treatment with plaintiff and the supportability of her opinion. Dr. Sieben's June 2006 assessment limited plaintiff to less than sedentary work. Dr. Sieben restricted plaintiff to lifting no more than five pounds, to walking and sitting for a total of two to three hours in an eight-hour

workday, and to various other limitations. (Tr. 818-820). Plaintiff alleges the ALJ erred by not giving "good reasons" for rejecting Dr. Sieben's finding of disability. Plaintiff contends the findings of the state agency doctor do not constitute substantial evidence to reject Dr. Sieben's findings and that the ALJ erred when he ignored the positive objective findings on examination and tests which support Dr. Sieben's limitations, including "spasms, the weakness on exams (Tr. 692), the decreased strength in the arms and legs (Tr. 818-20), and the left foot drop and problems (Tr. 735-742, 911)." (Doc. 8 at 7).

Initially, the Court determines that the ALJ properly addressed the Court's concerns set forth in its previous remand order. While the Court upheld the ALJ's finding that Dr. Sieben's functional capacity assessment was not entitled to "controlling weight," the ALJ did not specify the weight, if any, he attributed to the treating doctor's opinion. Nor did the ALJ explain the evidentiary basis for his RFC determination. The ALJ has done both in the instant decision under review.

First, the ALJ explicitly gave no weight to Dr. Sieben's assessment that plaintiff could not perform even sedentary work activity by specifying that "Dr. Sieben's opinion . . . has been rejected." (Tr. 493). In accordance with the Court's prior remand order, the ALJ gave specific reasons for his decision that are supported by substantial evidence in the record.

As the ALJ pointed out in his decision, Dr. Sieben's opinion–the only one in the record indicating disability–is not well-supported. The ALJ noted that Dr. Sieben appeared to accept plaintiff's subjective complaints at face value. (Tr. 491). The ALJ specifically noted that in support of Dr. Sieben's opinion that plaintiff's is limited in several respects, the doctor related plaintiff's subjective complaints that "she has been off balance and falling while walking," "may

need to hold handrail or onto furniture while walking," and "cannot reliably reach, grasp, push/pull etc. Muscle strength gives out." (Tr. 491, 818, 820). The ALJ also noted significant gaps in treatment in the record: plaintiff did not see Dr. Sieben from September 2002 to March 2005, nor from January 2006 to September 2006. (Tr. 492). While plaintiff argues that Dr. Sieben's assessment is supported by findings of "unstable gait, weak legs on exams, decreased strength, and absent reflexes at Tr. 818-820" (Doc. 8 at 5), plaintiff cites only to a single progress note from July 2005 showing spasms (Doc. 8 at 7, citing Tr. 692)[1] and to Dr. Sieben's RFC report itself. (Tr. 818-820). Plaintiff has not directed the Court's attention to any specific portions of Dr. Sieben's treatment notes or the other record evidence–aside from the "foot drop" problem which will be discussed below–showing objective clinical or neurological findings that support Dr. Sieben's opinion that plaintiff is limited to less than sedentary work. In addition, although Dr. Sieben referred plaintiff to physical therapy to evaluate her need for ambulatory aids, there is no follow up report indicating the result of any such evaluation or any medical opinion confirming a need for ambulatory aids. Notably, plaintiff was only prescribed medication and physical therapy by her treating family doctor. Plaintiff's conservative treatment and diminished credibility, as explained below, further support the ALJ's decision rejecting Dr. Sieben's opinion which relied in large part on plaintiff's subjective complaints. Likewise, the ALJ noted the "lack of evidence of any new orthopedic impairment since the date of the prior decision or objective evidence (diagnostic imaging tests, EMG, etc.) of any deterioration of [plaintiff's] condition." (Tr. 492). Under the circumstances, the ALJ did not err in rejecting the

---

[1]Plaintiff also cites to Dr. Sieben's July 2005 report for the proposition that plaintiff showed "weakness on exams." (Doc. 8 at 7, citing Tr. 692). In reality, this was not a clinical finding on examination but a subjective complaint by plaintiff to her doctor: "feels weak, sometimes can hardly walk." (Tr. 692).

11

more limiting RFC opinion provided by Dr. Sieben and gave "good reasons" for his decision in accordance the Social Security regulations. *See Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004) (ALJ must articulate "good reasons" based on record evidence for not giving weight to treating physician's opinion).

Second, the ALJ explained the evidentiary basis for his RFC determination in accordance with the Court's previous remand order. The ALJ explicitly stated he based his RFC for a limited range of light work on the assessments of the state agency physicians in conjunction with additional limitations based on the findings of Dr. Pledger. (Tr. 493).[2]

Plaintiff alleges the state agency doctor's RFC is incomplete because that doctor did not review Dr. Sieben's RFC report or the evidence concerning plaintiff's unstable gait and foot drop. (Doc. 8 at 5). Dr. Sieben's June 2006 assessment obviously post-dated the initial May 2006 state agency review of the record. Nevertheless, as explained above, given the gap in Dr. Sieben's treatment records from January 2006 to September 2006, the state agency doctor in fact had Dr. Sieben's pertinent clinical records from March 2005 to January 2006. Also, the second state agency doctor who reviewed the entire record in October 2006, including Dr. Sieben's June 2006 assessment, affirmed the RFC for light work. (Tr. 817). More importantly, while the ALJ gave greater weight to the opinions of the state agency doctors in determining plaintiff's RFC, the ALJ did not blindly adopt those opinions but also imposed additional restrictions based on the findings of Dr. Pledger further limiting the range of light work plaintiff could perform. (Tr. 493, 665-670). The ALJ thus provided the medical basis for his RFC decision in accordance

---

[2]Although plaintiff faults the ALJ for referring to Dr. Pledger as a neurosurgeon in one part of his decision, the ALJ accurately noted that Dr. Pledger is an orthopedic specialist in another part of his decision. (Tr. 487).

with the Court's previous decision.[3]

Plaintiff also contends the ALJ failed to accommodate her foot drop problem in determining her RFC. Plaintiff was diagnosed with foot drop in late 2004. (Tr. 432). In January 2005, Dr. Wadhwa, a neurologist, reported clinical evidence of improvement compared to when plaintiff was initially seen in October 2004 and noted that at that time she had just sustained a fracture. (Tr. 430-31). By October 2005, Dr. Lichota, a pain management specialist, reported "there is no foot drop currently, although she did have a left drop foot a little over a year ago that resolved." (Tr. 661-63). Plaintiff argues the problem returned in June 2006 requiring treatment by Dr. Klein, a podiatrist. (Doc. 8 at 6, citing Tr. 737, 901-911). Dr. Klein's note at Tr. 737 states "cramps in feet" and "taping helped!" (Tr. 737). Dr. Sieben's records at Tr. 901-911 from September 2006 to January 2007 note plaintiff's complaints of foot pain and cramping. While plaintiff complained of left foot "give out–drop" in September 2006, Dr. Sieben noted that on clinical exam "no foot drop observed." (Tr. 911). The ALJ acknowledged the references to "foot drop" in the record by various doctors, but reasonably concluded that such references appeared "to be based on claimant's allegations as no clear, objective clinical evidence of foot drop is diagnosed." (Tr. 493). Aside from the January 2005 EMG findings (Tr. 430), plaintiff has cited to no objective findings in her statement of errors supporting a diagnosis of or limitations from left foot drop subsequent to Dr. Lichota's October 2005 report–a report confirming the problem had resolved. Plaintiff's subjective complaints of foot drop do not constitute objective medical

---

[3] To the extent plaintiff suggests that the ALJ's reliance on the state agency doctor conflicts with this Court's previous remand order which noted the ALJ could not rely on the state agency doctors at that time for an RFC for light work (Doc. 8 at 4), her argument is without merit. In the previous decision, the state agency doctors found no severe impairment and therefore did not reach the fourth step of the sequential evaluation process requiring the assessment of plaintiff's RFC. *See* 20 C.F.R. § 404.1545(e). In contrast, the instant appeal involves an assessment of plaintiff's RFC by the state agency doctors.

findings supporting her claim of disability. *See Walton v. Commissioner of Social Security*, 60 Fed. Appx. 603, 610 (6th Cir. 2003) (citing *Young v. Sec. of Health & Human Services*, 925 F.2d 146, 151 (6th Cir. 1990)); *see* 20 C.F.R. § 404.1528. The ALJ's decision to rely on the opinions of the state agency doctors and the findings of Dr. Pledger in determining plaintiff's RFC is substantially supported by the record in this case.

Plaintiff also contends the ALJ "did not give good reasons for rejecting the limitations of Dr. Freeland, the psychiatrist." (Doc. 8 at 7). Plaintiff has not supported this claim of error with any argument or citations to the record evidence. Without any particular citations to the medical evidence in this case in support of this claim and an explanation of how such evidence is pertinent to plaintiff's claim of error, the Court is unable to assess the merits of plaintiff's argument and declines to speculate on how or whether the ALJ erred in assessing Dr. Freeland's opinion.

In sum, plaintiff's first and second assignments of error are without merit and should be overruled.

Plaintiff's third assignment of error asserts the ALJ erred in assessing plaintiff's credibility and allegations of pain. (Doc. 8 at 8). Plaintiff contends the ALJ failed to consider the regulatory factors in assessing her credibility or acknowledge the objective evidence supporting her allegations of pain and limitations. *Id.*

Plaintiff, however, fails to point to specific record evidence showing that objective medical evidence confirms the severity of the pain she alleges or that her objectively established medical conditions can reasonably be expected to produce her allegedly disabling pain. *Duncan*, 801 F.2d at 853. As the ALJ reasonably noted, there is little evidence of a hand or arm

impairment as plaintiff described (Tr. 490) and minimal evidence of a serious back impairment. (Tr. 491).[4] Although the January 2005 EMG supported plaintiff's complaints regarding foot drop at that time, the problem was resolved by October 2005 (Tr. 663) and plaintiff does not cite the Court to any evidence of a significant foot problem that would explain the extreme pain and limitations she alleges. The ALJ also noted that plaintiff's use of a walker and cane late in the record is medically unexplained, though her podiatrist and family doctor apparently acquiesced in plaintiff's request for such ambulatory aids. (Tr. 490, 492). And contrary to plaintiff's argument (Doc. 8 at 8), the ALJ in fact acknowledged plaintiff's treating family doctor prescribed medication for her. (Tr. 492). However, plaintiff has pointed to no medical records showing she suffered from any side effects from her medications. The ALJ also noted that despite plaintiff's extreme allegations of pain, weakness, and instability, plaintiff has not been hospitalized, undergone surgery for an orthopedic problem of any nature, or received intensive treatment of any kind. (Tr. 492).

The ALJ's decision sets forth in detail the reasons for his credibility finding. (Tr. 490, 492-93, 497-98). The ALJ's decision reflects that he properly considered the required factors in determining plaintiff's credibility, including her allegations of disabling pain. *See* 20 C.F.R. § 404.1522(c). In light of the ALJ's opportunity to observe plaintiff's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Kirk,* 667 F.2d at 538. *See also Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Gaffney v. Bowen,* 825 F.2d 98, 101 (6th Cir. 1987). Accordingly, the Court finds substantial evidence supports the

---

[4]*See* Feb. 2002 MRI (mild degenerative disease)(Tr. 176); March 2002 CT scan (mild bulges at L3-4 and L4-5 without evidence of significant thecal sac or neural foraminal narrowing) (Tr. 178); March 2002 EMG (normal; no evidence of lumbar radiculopathy or peripheral neuropathy; pain of soft tissue origin) (Tr. 180-82); Oct. 2002 x-rays (normal) (Tr. 266, 269); June 2005 MRI (mild degenerative disc disease).

ALJ's credibility finding in this matter. Therefore, plaintiff's third assignment of error should be overruled.

Lastly, plaintiff argues the "ALJ erred vocationally when he failed to find that the most work Ms. Tate can do exertionally is sedentary work due to the low back, leg, and foot problems." (Doc. 8 at 8). Plaintiff's fourth claim of error is merely a reformulation of her challenges to the ALJ's RFC finding and weighing of the medical evidence. For the reasons set forth above with respect to the first and second assignments of error, the ALJ's decision in these regards is substantially supported by the record. Therefore, plaintiff's fourth assignment of error is without merit.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this case be dismissed from the docket of this Court.

Date: 12/4/09

Timothy S. Hogan
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

BARBARA TATE,
  Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
  Defendant

Case No. 1:09-cv-138
Barrett, J.
Hogan, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to these proposed findings and recommendations within **FOURTEEN DAYS** after being served with this Report and Recommendation ("R&R"). Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this R&R is being served by mail. That period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **FOURTEEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).